## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE HORAN,** | ) | |
| 5821 NW 72nd Street | ) | |
| Kansas City, MO 64151 | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. _____ |
| **TUTERA GROUP, INC.** | ) | |
| *Serve Registered Agent:* | ) | **REQUEST FOR JURY TRIAL** |
| Michael F. Flanagan | ) | |
| 7611 State Line Road, Suite 303 | ) | |
| Kansas City, Missouri 64114 | ) | |
| | ) | |
| **TUTERA INVESTMENTS, LLC** | ) | |
| *Serve Registered Agent:* | ) | |
| Michael F. Flanagan | ) | |
| 7611 State Line Road, Suite 303 | ) | |
| Kansas City, Missouri 64114 | ) | |
| | ) | |
| **TUTERA SENIOR LIVING, LLC** | ) | |
| *Serve Registered Agent:* | ) | |
| Michael F. Flanagan | ) | |
| 7611 State Line Road, Suite 303 | ) | |
| Kansas City, Missouri 6114 | ) | |
| | ) | |
| Defendant. | ) | |

### PETITION FOR DAMAGES

COMES NOW, Christine Horan ("Plaintiff"), by and through her attorneys, and brings this

Complaint for Damages against Tutera Group, Inc., Tutera Investments, LLC, and Tutera Senior

Living, LLC (collectively "Defendants"), and alleges as follows for her cause of action:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, residing in Kansas City, Platte County, Missouri.

2. Defendant Tutera Group, Inc. ("Defendant Tutera Group") is and was at all relevant times a domestic for-profit corporation incorporated under the laws of Missouri, with its principal place of business in Kansas City, Jackson County, Missouri.

3. Defendant Tutera Group conducts substantial and continuous business and has substantial and numerous contacts with the State of Missouri and Jackson County.

4. Defendant Tutera Investments, LLC ("Defendant Tutera Investments") is and was at all relevant times a domestic for-profit corporation incorporated under the laws of Missouri, with its principal place of business in Kansas City, Jackson County, Missouri.

5. Defendant Tutera Investments conducts substantial and continuous business and has substantial and numerous contacts with the State of Missouri and Jackson County.

6. Defendant Tutera Senior Living, LLC ("Defendant Senior Living") is and was at all relevant times a domestic for-profit corporation incorporated under the laws of Missouri, with its principal place of business in Kansas City, Jackson County, Missouri.

7. Defendant Senior Living conducts substantial and continuous business and has substantial and numerous contacts with the State of Missouri and Jackson County.

8. Defendants jointly maintain and operate a place of business at 7611 State Line Road, Suite 301, Kansas City, Jackson County, Missouri 64114.

9. Upon information and belief, Defendants are joint and/or single employers of Plaintiff with substantial interrelation of operations, and common ownership and/or financial control.

10. This is an employment case based upon and arising under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq*. ("MHRA"), the Missouri Service Letter Statute, Mo. Rev. Stat. § 290.140, the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.010 *et. seq*., the Americans with Disabilities Act ("ADAAA"), as amended in 2008, 42 U.S.C. § 12101 *et*

*seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII").

11. Plaintiff was an employee of Defendants within the meaning of the MHRA, the Missouri Service Letter Statute, the Missouri Workers' Compensation Law, the ADAAA, Title VII, and the ADEA.

12. Defendants are employers within the meaning of the MHRA, Mo. Rev. Stat. § 213.010(8), the Missouri Service Letter Statute, Mo. Rev. Stat. § 290.140, the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.030.1, the ADAAA, 42 U.S.C. § 12111(5)(A), Title VII, 42 U.S.C. §§ 2000e(b), and the ADEA, 29 U.S.C. § 630(f).

13. This Court has jurisdiction and venue over all factual and legal matters relevant to the cause of action.

14. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Missouri Western Division.

15. Jurisdiction and venue are proper in the Western District of Missouri Western Division pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1391(b).

**Administrative Procedures**

16. On or about February 28, 2022, Plaintiff timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination alleging disability discrimination, sex discrimination, age discrimination, and retaliation (attached as Exhibit 1 and incorporated herein by reference).

17. On or about August 31, 2022, the EEOC issued to Plaintiff her Notices of Right to Sue (Exhibit 2) and this lawsuit was filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

3

18. On or about October 13, 2022, the MCHR issued to Plaintiff her Notices of Right to Sue (Exhibit 3) and this lawsuit was filed within ninety (90) days of the issuance of the MCHR's Notice of Right to Sue.

19. The aforesaid Charge of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of a MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

20. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action and it has been filed within the requisite statute of limitations.

## General Allegations Common to All Counts

21. Plaintiff began working for Defendants on or about September 10, 2020, as a Senior Property Manager.

22. In approximately January 2021, Plaintiff was at Defendants' property in Raytown, Missouri, and the sidewalk was covered in black ice and snow.

23. Because Defendants did not remove the ice and snow or salt the ground, Plaintiff slipped and fell, landing on her head, and blacked out.

24. When Plaintiff was able to, she called Defendants and reported to them what had happened.

25. Plaintiff told Defendants that she wanted to be seen at the hospital because there was blood pouring out of her head, but Defendants would only allow her to go to their workers' compensation doctor.

26. Defendants' workers' compensation doctor did not provide Plaintiff with the proper care for her injuries.

27. Plaintiff informed Defendants that she was not receiving the proper care for her injuries, but Defendants still refused to let her be seen anywhere else for her injuries besides the workers' compensation doctor.

28. Later that same day, Plaintiff filed a workers' compensation claim.

29. Shortly thereafter when Plaintiff's symptoms did not resolve, Plaintiff followed up with Defendants' workers' compensation doctor.

30. Plaintiff informed the workers' compensation doctor that she was having trouble with her memory, and experiencing dizziness, fogginess, and blurry vision.

31. Notably, the doctor just told Plaintiff that these symptoms would go away eventually.

32. When Plaintiff's symptoms persisted, she went back to Defendants' workers' compensation doctor.

33. In approximately August 2021, Defendants finally sent Plaintiff to a concussion clinic, Comprehension Concussion Care.

34. At the clinic, Plaintiff was diagnosed with a cognitive impairment.

35. The doctor performing Plaintiff's exam explained that she was testing as a person in high school, and not someone with two master's degrees.

36. Plaintiff's doctor sent a report of her diagnosis to Defendants' workers' compensation insurance.

37. Shortly thereafter, Human Resources Liana Gravatt ("HR Gravatt") began harassing Plaintiff to close her worker's compensation case.

38. In approximately September 2021, HR Gravatt began to hunt Plaintiff down and follow Plaintiff down the hallway saying, "You need to close your case. You need to close your case."

39. Plaintiff informed HR Gravatt that she would not be closing her case because her injuries were not resolved.

40. HR Gravatt would then say things like, "Well what is wrong with you? What is the problem?", "You really need to close this, let's get this resolved", and "You know the last person that had a concussion took us for money and wouldn't work for a year, so what is going on with you?".

41. Plaintiff responded to HR Gravatt that she did not want to discuss her medical issues in the middle of the corridor.

42. HR Gravatt continued to harass Plaintiff about her workers' compensation case, and Plaintiff repeatedly asked HR Gravatt to stop talking about her medical issues.

43. HR Gravatt continued to confront Plaintiff several days a week.

44. The Case Manager from Defendants' workers' compensation insurance company [Name Unknown] ("Case Manager") also began calling Plaintiff to try to get her to close her workers' compensation case.

45. Case Manager told Plaintiff, "You know you are only going to get a thousand (1,000) dollars for the scar on your face. You just need to close your case."

46. Case Manager also told Plaintiff, "Well, you are older and when you get older your eyesight gets bad. It cannot be the fall that caused your eyesight, you are older and it is degenerative."

47. Notably, Defendants sent Plaintiff to see an optometrist, and the optometrist told Plaintiff that he could not help her because the problem was not her eye.

48. On one occasion, Case Manager called Plaintiff and said, "I found out that I can't close out your case until your concussion doctor signs off on it, so you need to call your doctor and tell him you are closing your case. You need to be done with this."

6

49. Shortly thereafter, Controller Esty Franks ("Controller Franks") (age 32-34) left a meeting to get an electric blanket because she was cold.

50. When Plaintiff told Controller Franks that she did not think it was that cold, Controller Franks responded, "Well that is because you women in menopause like it freezing!"

51. Controller Franks said this in front of the Vice President of Real Estate, Matt Kaushal ("VP Kaushal"), whose eyes got big when Controller Franks said this.

52. Plaintiff reported the menopause comment to Human Resources Joe Pollina ("HR Pollina").

53. In approximately October 2021, Plaintiff sent written correspondence to her subordinate, Rachel Barrett ("Subordinate Barrett"), regarding performance issues and missed training classes.

54. On or about November 8, 2021, Plaintiff discussed Subordinate Barrett's unimproved performance with VP Kaushal, and they agreed that Subordinate Barrett should be placed on a performance improvement plan ("PIP").

55. On or about November 9, 2021, Plaintiff took Subordinate Barrett to lunch to go discuss her performance.

56. On or about November 12, 2021, HR Pollina informed Plaintiff that "someone" had made a complaint against Plaintiff but would not say who made the complaint.

57. HR Pollina stated the complaint alleged that Plaintiff made comments that Controller Franks and another employee, Jonathan [Last Name Unknown] ("LNU") hooked up at a party.

58. Plaintiff told HR Pollina that she had never made a statement or comment like that.

59. On or about November 15, 2021, Plaintiff placed Subordinate Rachel on the PIP as was previously discussed with VP Kaushal.

7

60. Prior to sending the PIP to Subordinate Rachel, Plaintiff sent it to VP Kaushal and Director of Capital Improvements Brian Thompson ("Director Thompson") to review.

61. On or about December 3, 2021, HR Pollina stated that if Plaintiff did not bring in documents to prove Plaintiff instructed Subordinate Rachel to take Microsoft training classes, then they would have to part ways.

62. Notably, VP Kaushal strongly objected, stating that Plaintiff should not be terminated because she did not do anything wrong.

63. VP Kaushal stated that HR Pollina had an email from another employee named Tim [LNU] (Subordinate Rachel's husband) saying that they were trying to get Plaintiff in trouble and asked why HR Pollina did not disclose this to them.

64. HR Pollina did not care about what VP Kaushal had to say.

65. On or about December 6, 2021, Plaintiff brought in the documents HR Pollina requested.

66. Shortly thereafter, on or about December 7, 2021, HR Pollina arranged a meeting with Plaintiff.

67. Plaintiff responded via e-mail that she was apprehensive about attending the meeting.

68. However, during this meeting, HR Pollina terminated Plaintiff for alleged retaliation against Subordinate Barrett for her complaint against Plaintiff.

69. When Plaintiff asked how she could have retaliated against Subordinate Rachel when she did not know Subordinate Rachel made the complaint, HR Pollina responded that Plaintiff must have inferred it was Subordinate Barrett who made the complaint.

70. HR Pollina then told Plaintiff that she is bossy, intimidating, and nasty.

71. Plaintiff responded that no one tells her male co-workers that they are bossy, intimidating, or nasty, and asked if he was only saying that about Plaintiff because she is a woman.

8

72. HR Pollina did not respond to Plaintiff's question.

73. Shortly thereafter, VP Kaushal called and told Plaintiff that she did nothing wrong, and that he explained to HR Pollina that they had been discussing Subordinate Rachel's performance since mid-October.

74. VP Kaushal told Plaintiff that he was upset and that he had told them not to terminate Plaintiff's employment.

75. Notably, in approximately the five (5) months leading up to Plaintiff's termination, Defendants terminated five (5) women that were at least forty (40) years old, and each one was replaced by a younger employee.

76. Upon information and belief, Plaintiff was replaced by a younger employee.

77. Additionally, when Plaintiff participated in Defendants' interviews of prospective employees, Asset Manager Dominic Tutera ("Manager Tutera") would often ask, "Well how old is [insert name of candidate]?"

78. On one particular occasion, when Manager Tutera asked how old a candidate was, VP Kaushal responded, "You can't say stuff like that. You can't ask someone how old they are."

79. Manager Tutera responded, "Well I want to know that before I hire them."

80. On or about December 9, 2021, Plaintiff called the concussion clinic and the doctor stated that he had no idea why Plaintiff was not sent to him within 90 days initially, because he could have helped Plaintiff with some of her symptoms, but by that point, it was too late.

81. Plaintiff's doctor informed her that she needed to follow up with a cognitive psychiatrist or psychologist to receive therapy to help with her cognitive impairment.

82. Additionally, he told Plaintiff that Case Manager was very aggressive with their clinic after receiving the report from them initially, in approximately August 2021, and wanted them to change their diagnosis.

83. The clinic informed Plaintiff that they told Case Manger they would not be changing Plaintiff's diagnosis and Case Manager needed to refer her to a cognitive psychiatrist or psychologist for treatment.

84. Plaintiff never received the referral and learned about it for the first time during the phone call with the doctor in approximately December 2021.

85. Importantly, since Plaintiff's termination, Defendants have continued to try and pressure Plaintiff into closing her workers' compensation case.

86. On one occasion, VP Kaushal texted Plaintiff and said, "Hey Christine – We've got HR to payout your PTO, but need to have you sign a release for the WC claim you mentioned."

87. Thus, Defendants have withheld payment for Plaintiff's unused PTO days until she closes her workers' compensation case.

88. On or about December 17, 2021, VP Kaushal e-mailed Plaintiff a document titled "Settlement Agreement and General Release", which appeared to be an attempt to get Plaintiff to resolve her workers' compensation case in exchange for $6,155.12, payment for Plaintiff's unused PTO, and the $1,000 end of the year bonus that she would have been entitled to, had she not been terminated.

89. On or about January 6, 2022, Owner Joe Tutera ("Owner Tutera") called Plaintiff and asked her not to sue him, and asked if they could go back and have her resign and then he would give Plaintiff payment for her unused PTO days.

## COUNT I
### Disability Discrimination in Violation of Mo. Rev. Stat. § 213.010 et seq.

90. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

91. Plaintiff is disabled or was perceived as disabled pursuant to the MHRA because she suffers from a concussion and cognitive impairment. Also, Defendants regarded Plaintiff as having these disabilities and have a record of these disabilities; thus, Plaintiff is a member of a class of persons protected by the MHRA.

92. Plaintiff's disabilities affect several major life activities including, but not limited to, communication, socialization, employment, and neurological function, as described in the MHRA.

93. Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

94. Plaintiff's disabilities or perceived disabilities were a motivating factor in Defendants' decision to terminate Plaintiff's employment.

95. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and/or employees of Defendants and were at all such times acting within the scope and course of their agency and/or employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondent superior*.

96. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees.

97. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

11

98. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her disabilities or perceived disabilities, in violation of Mo. Rev. Stat. § 213.010 *et seq.*

99. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

100. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress and related compensatory damages.

101. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

102. Plaintiff is entitled to recover reasonable attorneys' fees from Defendants, as provided in Mo. Rev. Stat. § 213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for compensatory damages, including but not limited to garden variety emotional distress; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Sex Discrimination in Violation of Mo. Rev. Stat. § 213.010 et seq.

103. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

104. Plaintiff is a member of a protected class under Title VII because she is female.

105. During her employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, termination.

106. Plaintiff's sex was at least a motivating factor in the adverse employment actions taken against her.

107. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

108. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against their employees, including sex discrimination.

109. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

110. Plaintiff suffered intentional discrimination at the hands of Defendants, based on her sex, in violation of the MHRA.

111. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

112. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

113. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

13

114. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

115. Pursuant to the provisions of the MHRA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for garden variety emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Age Discrimination in Violation of Mo. Rev. Stat. § 213.010 et seq.

116. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

117. Plaintiff is a member of a protected class under the MHRA because she is fifty-seven (57) years old, and was fifty-six (56) years old at the time of her termination.

118. During her employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, termination.

119. Plaintiff's age was at least a motivating factor in the adverse employment actions taken against her.

120. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and

14

course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

121. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against their employees, including sex discrimination.

122. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

123. Plaintiff suffered intentional discrimination at the hands of Defendants, based on her age, in violation of the MHRA.

124. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

125. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

126. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

127. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

128. Pursuant to the provisions of the MHRA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

15

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, including but not limited to garden variety emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Retaliation in Violation of the Missouri Workers' Compensation Law, Mo. Rev. Stat. § 287.780

129. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

130. Defendants were Plaintiff's employer pursuant to the Workers' Compensation Law.

131. Plaintiff exercised her rights under the Workers' Compensation Law when she suffered a workplace injury, reported that injury, and sought treatment for that injury.

132. Defendants knew or anticipated that Plaintiff did or would file a workers' compensation claim before Defendants terminated her employment.

133. Plaintiff was subsequently terminated by Defendants.

134. Plaintiff's exercise of her workers' compensation rights was a motivating factor in Defendants' decision to terminate Plaintiff.

135. Plaintiff's exercise of her workers' compensation rights was a motivating factor in Defendants' decision to terminate Plaintiff.

136. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or

ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

137. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against their employees.

138. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the Workers' Compensation Law.

139. As shown by the foregoing, as a result of exercising her workers' compensation rights, Plaintiff suffered intentional retaliation in violation of the Workers' Compensation Law.

140. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

141. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem, in the form of garden variety emotional distress and related compensatory damages.

142. By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

143. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre-

and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
### Failure to Issue Letter of Dismissal in Violation of Mo. Rev. Stat. § 290.140

144. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

145. Defendants are corporations doing business in Missouri and employ seven or more employees within Missouri.

146. Plaintiff was employed by Defendants for at least ninety (90) days.

147. Plaintiff properly requested a letter of dismissal, or "service letter", from Defendants, on or about December 15, 2021, by sending such request in writing by certified mail to Defendants' superintendent, manager, or registered agent, with specific reference to the applicable statute.

148. On or about December 20, 2021, Defendants signed as receiving Plaintiff's "service letter" request.

149. Plaintiff's service letter request was sent within a reasonable period of time and less than one (1) year after the termination of her employment.

150. Defendants did not provide Plaintiff with the requested service letter within forty-five (45) days of Defendants' receipt of Plaintiff's request.

151. Defendants' failure to timely respond to Plaintiff's service letter request was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

18

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for compensatory damages, including but not limited to garden variety emotional distress; for nominal damages; for punitive damages; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VI (Plead in the Alternative)**
**Disability Discrimination in Violation of the ADAAA 42 U.S.C. § 12101 et seq.**

152. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all the above numbered paragraphs.

153. Plaintiff is disabled or was perceived as disabled pursuant to the ADAAA because she suffers from a concussion and cognitive impairment. Also, Defendants regarded her as having these disabilities and have a record of these disabilities; thus, Plaintiff is a member of a class of persons protected by the ADAAA.

154. Plaintiff's disabilities substantially affect several major life activities including, but not limited to, major bodily functions such as her neurological function, as well as her activities of communication, socialization, and working as described in the ADAAA.

155. Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

156. Plaintiff's disabilities or perceived disabilities were a motivating factor in Defendant's decision to terminate Plaintiff's employment.

157. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by

Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

158. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against their employees.

159. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

160. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants, based on her disabilities or perceived disabilities, in violation of the ADAAA.

161. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

162. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, mental anguish, and pain, in the form of garden variety emotional distress damages and related compensatory damages.

163. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

164. Plaintiff is entitled to recover from Defendants reasonable attorneys' fees as provided in the ADAAA.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, for costs incurred herein; for punitive damages; for pre- and post-judgment interest as

allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT VII (Plead in the Alternative)**
**Sex Discrimination in Violation of 42 U.S.C. §§ 2000e et seq. (Title VII)**

165. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

166. Plaintiff is a member of a protected class under Title VII because she is female.

167. During her employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, termination.

168. Plaintiff's sex was at least a motivating factor in the adverse employment actions taken against her.

169. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

170. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against their employees.

171. As shown by the foregoing, as a result of her sex, Plaintiff suffered intentional discrimination at the hands of Defendants in violation of Title VII.

172. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

21

173. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

174. By failing to take prompt and effective remedial action, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

175. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other employers from like conduct in the future.

176. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, including but not limited to garden variety emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## <u>COUNT VIII (Plead in the Alternative)</u>
### Age Discrimination in Violation of the ADEA 29 U.S.C. §§ 621 et seq.

177. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

178. Plaintiff is a member of a protected class under the ADEA because she is fifty-seven (57) years old, and was fifty-six (56) years old at the time of her termination.

179. During her employment with Defendants, Plaintiff suffered several adverse actions including, but not limited to, termination.

180. Plaintiff's age was at least a motivating factor in the adverse employment actions taken against her.

181. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

182. Defendants failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against their employees, including sex discrimination.

183. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADEA.

184. Plaintiff suffered intentional discrimination at the hands of Defendants, based on her age, in violation of the ADEA.

185. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

186. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

187. By failing to take prompt and effective remedial action and instead of re-employing Plaintiff, Defendants, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

188. Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

189. Pursuant to the provisions of the ADEA, Plaintiff is entitled to recover reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for compensatory damages, including but not limited to garden variety emotional distress; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff requests a trial by jury on all counts alleged in the Complaint.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By:    /s/ Lauren H. Beck
       M. Katherine Paulus   MO 60217
       m.paulus@cornerstonefirm.com
       Lauren H. Beck        MO 72724
       l.beck@cornerstonefirm.com
       5821 NW 72nd Street
       Kansas City, Missouri 64151
       Telephone            (816) 581-4040
       Facsimile            (816) 741-8889
       **ATTORNEYS FOR PLAINTIFF**

24